## Texas & Gulf Railway Company v. T. C. Whiteside.

### Decided May 5, 1909.

**1.—Statute of Frauds—Contract—Subscription to Railway.**

A contract by which a railway company obligated itself to extend its line from Timpson to some point south so as to connect with another road, in consideration of the agreement of certain parties to pay a certain sum as a donation, under which a certain amount thereof was paid to the company to secure right of way and terminal facilities, was not a contract for the sale of real estate and therefore not within the statute of frauds.

**2.—Contract—Breach—Subscription to Railway—Recovery of Money Paid.**

Where the subscription contract did not specify how the amount subscribed should be paid to the railway company or what for, but expressly provided that should the company fail to extend its line to the connection contemplated it should repay any amount the subscribers may have paid on their subscriptions, the fact that it was understood between the parties that so far as necessary the amounts paid might be expended in securing right of way could not prevent the subscriber from recovering the amount paid on failure of the company to so extend its line.

**3.—Limitation—Breach of Contract—Burden of Proof.**

Where the subscription contract bound the railway company to extend its road to a certain connection within a reasonable time in consideration of a donation, one-half of which was to be paid when the road was extended fifteen miles and the remainder when the connection was made, and it appeared that when the fifteen mile point was reached there was no refusal to extend the road further at that time, in order to bar a recovery it was incumbent upon the company to show that the reasonable time which it had under the contract to finish the connection before being liable for the repayment of the money paid on the subscriptions, expired two years before the suit, and failing such proof there was no error in overruling its plea of limitation, assuming that the two years statute applied.

**4.—Contract—Corporation—Ratification.**

Where the president assumed to make the contract on behalf of the corporation, and the latter appropriated and was using the right of way secured under the contract, it could not escape the obligations thereunder on the ground that it was not authorized by the stockholders or directors.

Appeal from the District Court of Nacogdoches County. Tried below before Hon. James I. Perkins.

*Young & Stinchcomb,* for appellant.

*Jno. T. Garrison,* for appellees.

JAMES, Chief Justice.—Whiteside alleged that he, in connection with other citizens of Timpson on or about October, 1904, executed and entered into a contract in writing with the defendant Texas & Gulf Railway Company, by which they agreed to pay defendant certain amounts of money as follows: Fifty percent as soon as defendant extended and operated trains upon its railroad fifteen miles from Timpson, and the remaining fifty percent when it connected with the Gulf, Colorado & Santa Fe Railway Company; and said railway company, for and in consideration of the amount so agreed to be paid by the

citizens of Timpson, agreed and obligated itself to extend its line from Timpson to some point south of Timpson so as to connect with the Gulf, Colorado & Santa Fe Railway Company; that said extension was agreed to be made within a reasonable time, said contract being annexed to the petition as exhibit A. That plaintiff and the other citizens of Timpson (naming some of them and alleging others as unknown), on whose behalf this suit is brought by plaintiff, paid the defendant the sum of $3,329.40, which money was used by defendant in the procuring of its right of way through Shelby County and depot grounds in Timpson. That the contract annexed and sued on was executed by the defendant, is a substantial copy of the original thereof, the original having been destroyed. That this copy was presented to the defendant railway company through its president, who acquiesced in the terms thereof and accepted the terms and conditions therein contained. That plaintiff and said citizens paid said money to defendant in pursuance of said agreement, the terms of which were understood by defendant, it accepting same knowing it was paid under such agreement, and that defendant has acted under said contract and has received the benefit and has accepted the donations and subscriptions of plaintiffs herein under the terms thereof, and is estopped from denying the execution of same, or that its terms are different from what is stated therein.

That said money was expended by plaintiffs under the direction of defendant for the purpose of securing for defendant said right of way and depot grounds, and that the right of way was used and is now being used by the defendant. That defendant constructed and is now operating its said road to a point south of Timpson about fifteen miles, and has not extended or connected its road to a point south of Timpson, so as to connect with the Gulf, C. & S. F. Ry. Co., and that defendant has had a reasonable time in which to make such extension, but has refused to make the same. That by reason of the payment of said money as aforesaid defendant, under its contract, was bound and obligated to make said extension in a reasonable time. That said agreement stipulated that in the event defendant refused to extend its line to a point connected with the Gulf, C. & S. F. Ry. Co. south of Timpson that it would refund to plaintiff and the citizens herein the amount so expended by them; that defendant has refused and failed to comply with said contract as aforesaid, by reason of which it is liable to the plaintiffs for the said sum so paid out, and that plaintiff Whiteside recover for the use of himself and for each of the plaintiffs herein the amount so expended.

The answer consisted of a general demurrer, and special demurrer No. 1, which was upon the ground that the petition shows the contract sued on to have been a verbal agreement on the part of defendant and within the statute of frauds; special demurrer No. 2, upon the ground that the petition shows that two years had elapsed after the cause of action accrued before the suit was filed. Also a general denial, and pleas of the statutes of limitations and frauds. Also that the contract was not authorized by the stockholders and directors of defendant, and therefore was no obligation of defendant.

Judgment was rendered by the court overruling the demurrers and

adjudging that Whiteside for himself and for the benefit of the others recover of defendant the sum of $3,329.40.

The first assignment of error is overruled. The contract sued on was not a contract for the sale of land and within the statute of frauds.

The second assignment makes this proposition: "There being no contract to refund any money for right of way or right-of-way purposes, the appellees are not entitled to a recovery." The statement of what is relied on to support the proposition is "that the second section of the contract provides that the citizens were to give to the railway company, in consideration for the enhanced value of their property, the amounts set opposite their names, fifty percent to be paid as soon as the road was extended fifteen miles and trains were operated over it, and the remaining fifty percent as soon as the connection was made with the Santa Fe Railway. There is nothing in the contract to the effect that the railway company was to repay any amount paid out for right of way."

The contract did not specify how the $8,800 subscribed should be paid to defendant, or what for. It could have been paid directly to defendant in money, or it could have been discharged by payment in furtherance of any of the uses of defendant with its consent. The testimony referred to by appellant as supporting the proposition is to the effect that it was understood between the citizens and the defendant's president that so far as necessary it might be expended towards the right of way. The fourth clause of the contract expressly provided that, should defendant fail to extend its line to the said connection, it should repay any amount the citizens may have paid on their subscriptions. The assignment is overruled.

The third assignment is that the evidence shows without contradiction that plaintiff's cause of action is based upon a contract for the sale of real estate, and that the agreement of the defendant consenting thereto was not in writing and signed by the defendant, and the contract was in violation of the statute of frauds. Under this assignment the only proposition is that a verbal contract for the sale of real estate is in violation of the statute of frauds. How the subject matter of this contract was a sale of real estate we fail to comprehend. This being all that is presented by proposition, we need not notice the assignment further.

The fourth assignment is that the court erred in rendering judgment for plaintiffs because the testimony, without contradiction, shows that the cause of action was barred by the statute of limitation of two years, and that it was based upon a verbal contract and accrued more than two years before the filing of the suit.

Appropriate to this point, the facts are that the contract bore date October 21, 1904. Defendant built the line for a distance of fifteen miles by May or June, 1905, when a settlement was asked of the citizens under the contract. The witness Garrison testified: "I made the settlement with him (the president) taking the amount subscribed, $8,800, as a basis. I took fifty percent of that amount, $4,400, as provided in the second section of the contract in evidence, deducted the amount paid for right of way from that, and calculated some other personal matters between Mr. Grigsby and me, and my recollection is

that there was about $1,366 going to Mr. Grigsby. I had exchange issued to him for that amount, but demanded that he execute an obligation that the railway would be constructed to the line of the Santa Fe before I would pay him. He declined to do this, saying that the railway would be extended. I informed him that I had been told that he and all the stockholders that owned stock in the Texas & Gulf Railway Company at the time the contract was entered into, had sold out to the A., T. & S. F. Ry. Co., and that as the contract was with him for the Texas & Gulf, I wanted some obligation from him that the A., T. & S. F. Ry. Co. would extend the line as the Texas & Gulf had agreed to do. I stated that I would not turn over the exchange to him until he did this, whereupon he grabbed up the right-of-way deeds and left the bank. He made no objection to deducting from the $4,400 the amount paid for the right of way. The only thing he objected to was entering into this agreement on his part. This was some time about May or June of 1906. . . . Since the Texas & Gulf Railway was finished to a point about twenty miles south of Timpson about July, 1905, there has nothing been done towards extending to the line of the Santa Fe."

The above reference by Garrison to the year 1906 was evidently intended as 1905. It thus appears from evidence in the record that the fifteen-mile point was reached in May, 1905. There was no refusal at that time to build the road further; on the contrary, the president declared it should be extended, and in fact it was extended further. The distance from Timpson to the proposed point of connection with the Santa Fe was forty miles.

If defendant had at any time refused to extend the road, we think plaintiffs' right of action to recover their expenditures under the contract would have accrued, and the statute would then have begun to run. But this did not occur. Certainly in July, 1905, the right of action had not accrued. The suit was filed January 17, 1908. The question is: Did the right of action accrue prior to January 17, 1906? The affirmation was on defendant to establish what was essential to the plea. It was therefore upon it to show that the reasonable time which it clearly had under the contract to finish the connection before being liable for the repayment of this money expired prior to January 17, 1906. We find no evidence directed to this particular fact. What testimony there is bearing on the subject would indicate that it would have required six months time or more to finish the last twenty miles after July, 1905, as it appears to have taken from October, 1904, to July, 1905, to build the first twenty miles. We think there was no error in not sustaining the plea, assuming that the two years statute applied.

The sixth assignment is that the judgment is erroneous, in that the testimony shows without contradiction that if any one ever entered into the contract sued upon it was not authorized by the stockholders or directors of the defendant, and was therefore not a valid obligation on the part of defendant. We find no testimony which could be treated as showing that the original of the contract was actually signed by or for the defendant corporation, and there was affirmative testimony of the secretary and treasurer of defendant that no resolution or

act of any kind was ever passed by the stockholders or directors authorizing Mr. Grigsby as president to make any contract with the citizens of Timpson. This may be so, but the evidence showed that Grigsby assumed to make the contract on behalf of the corporation, and that the latter accepted its benefits and thereby adopted it. The right of way obtained under the contract for it, it has appropriated and is using. It is in no attitude to say that it has not knowingly received these benefits. (Hayward Lumber Co. v. Cox, 104 S. W. 405.) Judgment affirmed.

*Affirmed.*